TRACY WILKISON
Attorney for the United States, Acting Under
Authority Conferred by 28 U.S.C. § 515
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
KERRY L. QUINN (Cal. Bar No. 302954)
Assistant United States Attorney
Major Frauds Section
TERRENCE P. MANN (Cal. Bar No. 211377)
Assistant United States Attorney
Santa Ana Branch Office
     United States Courthouse, 411 West 4th Street
     Santa Ana, California 92701
     Telephone: (213) 894-5423 / (714) 338-3536
     Facsimile: (213) 894-6269 / (714) 338-3708
     E-mail:    Kerry.L.Quinn@usdoj.gov
                Terrence.Mann@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | SA CR No. 13-001(B)-2-AG |
| Plaintiff, | GOVERNMENT'S SUPPLEMENTAL SENTENCING POSITION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SPECIAL AGENT PATRICIA MAZON |
| v. | |
| MAHER OBAGI, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Kerry L. Quinn and Terrence P. Mann, hereby files a supplemental sentencing position.

//

//

//

//

This supplemental sentencing position is based upon the attached memorandum of points and authorities, the attached declaration of Special Agent Patricia Mazon, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 5, 2018        Respectfully submitted,

TRACY WILKISON
Attorney for the United States

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

         /s/
KERRY L. QUINN
TERRENCE P. MANN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

The government submits this memorandum of points and authorities to respond to some of the arguments that defendant Maher Obagi ("defendant") submitted in the sentencing position that he filed on March 26, 2018 [docket number 480, "Def. Br."], objecting to certain parts of the presentence report that the United States Probation Office disclosed on January 29, 2018 [docket number 468, "PSR"].

**II.  ARGUMENT**

**A.   JUDICIAL FACT FINDING UNDER A PREPONDERANCE STANDARD IS APPROPRIATE FOR CONSPIRACY-RELATED GUIDELINE ENHANCEMENTS**

Defendant objects to the application of sentencing enhancements in the PSR for loss amounts, number of victims, and managerial role in the offense, citing the Supreme Court's decisions in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) and Blakely v. Washington, 542 U.S. 296, 303 (2004), because the jury did not make factual findings on these topics.  Def. Br. at 8-9.  Defendant also acknowledges, however, that the Ninth Circuit has held, even after Apprendi and Blakely, that judicial fact finding may be used to calculate the applicable sentencing guidelines including facts relevant to the enhancements that defendant contests.  United States v. Fitch, 659 F.3d 788, 795 (9th Cir. 2011).  Defendant says that he is making this argument simply to preserve it for appeal, and the government relies on well-established caselaw for its position on this issue.

Defendant also argues that a clear-and-convincing evidentiary standard applies to sentencing enhancements that "disproportionately impact the sentencing range," and he says that the +20 enhancement applied in this case for the loss amount qualifies as such an

enhancement. Def. Br. at 10. The cases that defendant cites, however, make clear that the heightened proof standard applies only to sentencing enhancements based on uncharged conduct, as compared to conduct committed in the course of a charged conspiracy. See, e.g., United States v. Treadwell, 593 F.3d 990, 1001 (9th Cir. 2010) ("We have repeatedly held that sentencing determinations relating to the extent of a criminal conspiracy need not be established by clear and convincing evidence."); United States v. Berger, 587 F.3d 1038, 1047-49 (9th Cir. 2009) ("[A] number of our cases squarely address the factual situation presented here. Those cases involve a defendant's fraudulent conduct where sentencing enhancements for financial loss are based on the extent of the fraud conspiracy. They hold that facts underlying the disputed enhancements need only be found by a preponderance of the evidence."); United States v. Armstead, 552 F.3d 769, 777 (9th Cir. 2008) ("[S]entencing enhancements based entirely on the extent of the conspiracy do not require the heightened standard of proof."); see also United States v. Hymas, 780 F.3d 1285, 1292 (9th Cir. 2015) ("[W]here losses are based on the extent of a criminal conspiracy, those losses need not be proven by clear and convincing evidence because the defendants had the opportunity at trial to challenge evidence of the extent of the fraud conspiracy.").

The government also submits that the due process concerns motivating a heightened proof standard for certain guideline determinations no longer exist after the Supreme Court's decision in United States v. Booker, 543 U.S. 220, 227 (2005), making clear that the guidelines are advisory only, and it is the government's position that guidelines determinations based on a preponderance standard always satisfy due process in the post-Booker world. Cf. Beckles v.

1  United States, 137 S. Ct. 886 (2017).  The government acknowledges,
2  however, that the Ninth Circuit has continued to apply a clear-and-
3  convincing standard to certain guideline determinations even after
4  Booker, see, e.g., Hymas, 780 F.3d at 1289-93; United States v.
5  Staten, 466 F.3d 708, 717 (9th Cir. 2006) (holding that "the clear
6  and convincing standard still pertains post-Booker for an enhancement
7  applied by the district court that has an extremely disproportionate
8  effect on the sentence imposed"), and the government raises the issue
9  here simply to preserve it in case of appeal.

**B.   JUDICIAL FACT FINDING IS APPROPRIATE FOR RESTITUTION ORDERS**

11     Defendant also objects, again citing Apprendi, to the
12 restitution order that the USPO recommends because, again, the jury
13 did not make findings on loss amount.  Def. Br. at 13.  As defendant
14 again acknowledges, however, the Ninth Circuit has held that Apprendi
15 does not apply to restitution orders, and in United States v. Green,
16 722 F.3d 1146 (9th Cir. 2013), it specifically declined to overrule
17 its prior precedent on this issue based on the Supreme Court's
18 decision in Southern Union Co. v. United States, 132 S. Ct. 2344,
19 2349-57 (2012), which held that Apprendi applies to criminal fines.
20 Defendants cite to the Supreme Court's even more recent decision in
21 Paroline v. United States, 134 S. Ct. 1710 (2014), to argue that
22 Green is no longer good law because the Supreme Court in Paroline
23 recognized the punitive nature of restitution orders.
24     Contrary to defendant's argument on this point, the Supreme
25 Court's decision in Paroline did not suggest that Apprendi applies to
26 restitution orders, nor did it question a court's authority to
27 determine restitution amounts.  To the contrary, the Court's decision
28 in Paroline, which involved proximate cause for losses in child

3

pornography cases, expressly contemplated that sentencing courts, not juries, will determine loss amounts for restitution purposes. The Court's recognition in Paroline of the punitive nature of restitution orders was simply part of its rejection of the overly expansive remedy that the victim asked the Court to impose, which would have held the defendant liable for the conduct of thousands of independent actors, without any legal or practical way of seeking contribution. The Court, in dicta, discussed how such a result could implicate the Excessive Fines Clause of the Eighth Amendment – because restitution, although different from a fine, "still implicates the prosecutorial powers of government," id. at 1726 (internal quotation marks and citation omitted), and while "the primary goal of restitution is remedial or compensatory, it also serves a punitive purpose." Id. (citations omitted). Defendant takes this commentary out of context to suggest that Paroline called into question a sentencing court's authority to order restitution; it did no such thing. The Court in Paroline in fact recognized that restitution is primarily remedial in nature, and it remanded the case for the lower courts to apply its holding with regard to determining the proper amount of restitution.

### C. UNDER ANY STANDARD OF PROOF, THE GOVERNMENT HAS ESTABLISHED THE FACTS SUPPORTING THE PROPOSED LOSS CALCULATIONS, VICTIM COUNT, AND ROLE ENHANCEMENT

The government previously submitted schedules and supporting documentation to both the USPO and defense counsel on loss amounts, which also support the +2 guideline enhancement for 10 or more victims in defendant's case. In abundance of caution, to ensure that the record is complete, the government submits with this supplemental sentencing position the declaration of Special Agent Patricia Mazon, dated April 5, 2018, with attached summary schedules of loss amounts

and supporting documentation.  Those schedules and supporting documents establish, on a loan-by-loan level, the $10,047,272 loss figure for defendant and co-defendants Ali Khatib and Momoud Aref Abaji and $7,471,766 for co-defendant Mohamed Salah (who was involved in the fraud for a shorter time period than other defendants).  The government submits that the facts already in the record, including testimony of numerous witnesses on defendant's role supervising co-defendants Burchell, Mohamed El Tahir, and Salah (PSR ¶ 74), are sufficient to establish the +3 role enhancement.

**III. CONCLUSION**

For the reasons set forth above, and in the government's initial sentencing position filed on March 30, 2018 [docket number 483], the government submits that the PSR correctly calculated the guidelines for this case and that a low-end guideline sentence is appropriate, with the government recommending that the Court order a prison term of 121 months, a 4-year term of supervised release, and a $400 special assessment, and that it order $10,047,272 in restitution.

## AFFIDAVIT

I, Patricia Mazon, being duly sworn, declare and state as follows:

### I. INTRODUCTION

1. I am a Special Agent with the United States Department of the Treasury, Office of the Special Inspector General for the Troubled Asset Relief Program ("SIGTARP") and have been so employed for nearly two years. Prior to my employment with SIGTARP, I was a Special Agent for the Internal Revenue Service Criminal Investigation Division ("IRS-CI") for approximately twenty-six years. From both my current work with SIGTARP and my prior work with IRS-CI, I have extensive experience in the investigation and prosecution of white collar criminal cases, including the analysis of financial data in connection with criminal investigations. I am currently assigned to the Los Angeles Field Office, Long Beach Post of Duty, where I am responsible for investigating violations of federal statutes over which SIGTARP has investigatory jurisdiction. From my prior work with IRS-CI, I am one the agents assigned to the investigation and prosecution of Ali Khatib, Momoud Aref Abaji, Maher Obagi, Wajieh Tbakhi, Jacqueline Burchell, and Mohamed Salah in United States v. Abaji, et al., 8:13-CR-001(B)-AG, and United States v. Khatib, 8:12-CR-141-AG.

2. I submit this declaration to summarize data and information that the government has previously provided to the United States Probation Office ("USPO") and defense counsel in connection with the USPO's preparation of presentence reports

1

for defendants Abaji, Obagi, Burchell, and Salah, and the calculation of the application sentencing guidelines for those defendants.

3. Attached as Exhibit A is a true and correct copy of a summary schedule showing loss calculations by victim for defendants Khatib, Abaji, and Obagi.

4. Attached as Exhibit B is a true and correct copy of a summary schedule showing loss calculations by victim for defendants Buchell and Salah. The loss calculations for these defendants are different than the loss calculations for the other defendants because defendants Burchell and Salah were involved in the charged conspiracy for a shorter time than the other defendants. Defendant Burchell is also responsible for additional losses not detailed here for her work with an escrow company called Point Break Escrow, which was involved in other fraudulent loans, where defendant Burchell's work on those loans is part of the relevant offense conduct for the offense to which defendant Burchell pled guilty.

5. Attached as Exhibit C is a true and correct copy of information (confidential parts redacted) received from victims supporting the loss calculation schedules attached as Exhibits A and B.

6. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief and this

2

declaration is executed at Long Beach, California, on April 5, 2018.

                                               Patricia Mazon
                                               Special Agent
                                               SIGTARP