**FILED**
CLERK, U.S. DISTRICT COURT

4/13/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____cd_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2021 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | SACR13-1(C)-DOC |
| Plaintiff, | |
| v. | S E C O N D S U P E R S E D I N G I N D I C T M E N T |
| MAHER OBAGI, aka "Maher Abaji," MOHAMED SALAH, aka "Mohamed Ismail," | [18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud and Bank Fraud; 18 U.S.C. § 1343: Wire Fraud] |
| Defendants. | |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1349]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Second Superseding Indictment:

1.   Co-conspirator Momoud Aref Abaji, also known as ("aka") "Aref Obaji," aka "Aref Abagi," was a real estate sales agent licensed to practice in the state of California.  Co-conspirator Abaji operated under the business Faris Realty and Investment Group, Inc., and maintained an office in Orange County, within the Central District of California.

1    2.    Co-conspirator Jacqueline Burchell was an escrow agent

2  practicing in the state of California.  Co-conspirator Burchell

3  operated under the business EscrowQuick,Inc., and maintained an

4  office in Orange County, within the Central District of California.

5    3.    Defendants MAHER OBAGI, aka "Maher Abaji," and MOHAMED

6  SALAH, aka "Mohamed Ismail," and co-conspirators Abaji, Wajieh

7  Tbakhi, and Mohamed El Tahir, and others known and unknown to the

8  Grand Jury, worked at various real estate investment companies owned

9  and managed by co-conspirator Ali Mustafa Khatib, including Excel

10 Investments, Event Marketing LLC, Faris Realty and Investment Group,

11 Inc., and Orange County Property Management, Inc.  Each of these

12 companies was operated from offices co-conspirator Khatib maintained

13 in Orange County, within the Central District of California.

14    4.    A Uniform Residential Loan Application ("Fannie Mae Form

15 1003" or "Freddie Mac Form 65") ("loan application") was submitted by

16 a prospective home buyer in order to obtain financing from a mortgage

17 lender.  The mortgage lender relied on the accuracy of the

18 information provided in a loan application in determining whether to

19 approve a loan and disburse funds for the purchase of real estate.

20    5.    A HUD-1 Settlement Statement ("HUD-1") was used to record

21 and disclose all receipts and disbursements relating to a real estate

22 purchase and sale transaction.  The accuracy of the information

23 disclosed on the HUD-1 was relied upon by the various parties to the

24 transaction, including the mortgage lender.

25 B.    THE OBJECTS OF THE CONSPIRACY

26    6.    Beginning no later than in or about November 2007, and

27 continuing through at least in or about June 2009, in Orange County,

28 within the Central District of California, and elsewhere, defendants

2

1  OBAGI and SALAH conspired with co-conspirators Abaji, Tbakhi, El

2  Tahir, and Khatib, and others known and unknown to the Grand Jury, to

3  commit the following offenses:

4        a.   Wire Fraud, in violation of Title 18, United States

5  Code, Section 1343; and

6        b.   Bank Fraud, in violation of Title 18, United States

7  Code, Section 1344(2).

8  C.   THE PURPOSE OF THE CONSPIRACY

9        7.   The purpose of the conspiracy was to defraud mortgage

10  lenders, including federally chartered and insured depository

11  institutions, by inducing them to fund loans for the purchase of

12  newly built, multi-unit condominium properties by submitting false

13  and fraudulent HUD-ls, loan applications, and supporting documents.

14  D.   MANNER AND MEANS OF THE CONSPIRACY

15       8.   The objects of the conspiracy were carried out, and to be

16  carried out, in substance, as follows:

17        a.   Co-conspirator Abaji and others known and unknown to

18  the Grand Jury would identify newly built, multi-unit condominium

19  properties, including properties located in Kissimmee, Orlando, and

20  Fort Myers, Florida; Antelope, California; and Phoenix and Tucson,

21  Arizona; in which the builder-owners ("sellers") were struggling to

22  sell the properties, and would make arrangements to sell the

23  properties on behalf of the sellers in exchange for a commission or

24  "marketing fee."

25        b.   Defendant OBAGI, co-conspirators Abaji and Tbakhi, and

26  others known and unknown to the Grand Jury, would purchase, and cause

27  the purchase of, over 100 condominium units for themselves, for their

28  close relatives, and for individuals with good credit scores who were

1  recruited to serve as nominee purchasers ("straw buyers")

2  (collectively, the "buyers").

3      c.   Defendant OBAGI, co-conspirators Abaji and Tbakhi, and

4  others known and unknown to the Grand Jury, would recruit straw

5  buyers by presenting the purchase of the condominium units as an

6  investment opportunity that did not require the straw buyers to make

7  any down payment or mortgage payments for a specified time period,

8  and by promising the straw buyers that defendant OBAGI, co-

9  conspirators Abaji and Tbakhi, and others known and unknown to the

10 Grand Jury, would manage the condominium units, rent the property,

11 and use the rental income to make mortgage payments on the straw

12 buyers' behalf.

13      d.   Defendants OBAGI and SALAH, co-conspirator Tbakhi, and

14 others known and unknown to the Grand Jury, would identify mortgage

15 lenders, including federally chartered and insured depository

16 institutions, to fund mortgages for the purchase of the condominium

17 units by the buyers, and would prepare and submit loan applications

18 to those mortgage lenders on behalf of the buyers.

19      e.   Defendants OBAGI and SALAH, co-conspirator Tbakhi, and

20 others known and unknown to the Grand Jury, would knowingly prepare

21 and submit to mortgage lenders loan applications that included

22 materially false and misleading information about the buyers'

23 intended occupancy of the properties and the buyers' employment,

24 income, assets, and liabilities.

25      f.   Defendants OBAGI and SALAH, co-conspirator Tbakhi, and

26 others known and unknown to the Grand Jury, would create fraudulent

27 documents, including fabricated and altered W-2 forms, pay stubs, and

28

4

1   bank statements, to support the false loan applications submitted to

2   the mortgage lenders.

3            g.    Defendant OBAGI, co-conspirator Tbakhi, and others

4   known and unknown to the Grand Jury, would falsely represent to the

5   mortgage lenders that the buyers had made a significant down payment

6   toward the purchase of the properties.

7            h.    Defendants OBAGI and SALAH, co-conspirators Abaji and

8   Tbakhi, and others known and unknown to the Grand Jury, would

9   simultaneously submit loan applications and HUD-1s to different

10  mortgage lenders for the purchase of multiple properties by the same

11  buyer, concealing from each mortgage lender the buyer's multiple loan

12  applications and liabilities.

13           i.    Co-conspirator Abaji, and others known and unknown to

14  the Grand Jury, would conceal from the mortgage lenders significant

15  "marketing fees" and commissions paid by the sellers to the

16  defendants and their co-conspirators, including Event Marketing LLC

17  and other companies controlled by the defendants and their co-

18  conspirators, which often totaled $50,000 to $100,000 or more by,

19  among other things, preparing and submitting to the mortgage lenders

20  false and fraudulent HUD-1s.

21           j.    Defendants OBAGI and SALAH, co-conspirators Abaji and

22  Tbakhi, and others known and unknown to the Grand Jury, would

23  distribute and cause the distribution of the funds paid as "marketing

24  fees" among themselves, and to their co-conspirators and the straw

25  buyers.

26  E.    OVERT ACTS

27       9.    In furtherance of the conspiracy and to accomplish its

28  objects, defendants OBAGI and SALAH, co-conspirators Abaji and

1    Tbakhi, and others known and unknown to the Grand Jury, on or about

2    the dates set forth below, committed and willfully caused to be

3    committed the following overt acts, among others, in the Central

4    District of California and elsewhere:

5        Kissimmee, Florida Property

6        Overt Act No. 1:    In November and December 2007, co-

7    conspirator Abaji negotiated a "marketing agreement" with the builder

8    of a townhouse development in Kissimmee, Florida ("the Kissimmee

9    builder"), whereby co-conspirator Abaji and other co-conspirators

10   would be paid a "marketing fee" of approximately $88,000 per unit

11   sold.

12       Overt Act No. 2:    On December 21, 2007, co-conspirator Abaji

13   received an email from a representative of the Kissimmee builder,

14   which stated that the Kissimmee builder would make "marketing"

15   payments to co-conspirator Abaji at the close of each property sale.

16       Overt Act No. 3:    On January 11, 2008, co-conspirator Tbakhi

17   provided straw buyer D.H. with a Washington Mutual Bank official

18   check in the amount of $35,934.19, which D.H. deposited to D.H.'s

19   Wells Fargo Bank account number XXXX4487.

20       Overt Act No. 4:    On January 15, 2008, at co-conspirator

21   Tbakhi's direction, approximately $35,934.19 was wired from D.H.'s

22   Wells Fargo Bank account number XXXX4487 to a title company, with the

23   notation, "Purchase down payment," relating to the purchase of

24   property at XX87 Town Terrace North from the Kissimmee builder.

25

26

27

28

1      <u>Antelope, California Property</u>

2      <u>Overt Act No. 5:</u>   In August 2008, co-conspirator Abaji

3 negotiated an agreement with the builder of a condominium development

4 at xx34 Walerga Road in Antelope, California ("the Antelope

5 builder"), whereby co-conspirator Abaji and other co-conspirators

6 would be paid a "credit" of approximately $84,000 to $90,000 per unit

7 sold.

8      <u>Overt Act No. 6:</u>   On September 10, 2008, defendant OBAGI

9 signed a loan application to lender Greenlight Financial Services

10 related to the purchase of condominium Unit 128 from the Antelope

11 builder, which contained false information about defendant OBAJI's

12 income, assets, and liabilities.

13      <u>Overt Act No. 7:</u>   On September 11, 2008, co-conspirator

14 Burchell prepared a HUD-1, marked "Estimated," which related to

15 defendant OBAGI's purchase of condominium Unit 128 from the Antelope

16 builder.  This "Estimated" HUD-1, which was submitted to mortgage

17 lender Greenlight Financial Services, falsely reflected a down

18 payment of approximately $46,280 from defendant OBAGI as the

19 borrower, and falsely reflected no cash paid to the borrower and no

20 "credit from seller to buyer."

21      <u>Overt Act No. 8:</u>   On September 12, 2008, co-conspirator

22 Burchell prepared a HUD-1, marked "Final," which related to defendant

23 OBAGI's purchase of condominium Unit 128 from the Antelope developer.

24 This "Final" HUD-1, which was not submitted to mortgage lender

25 Greenlight Financial Services but was maintained in co-conspirator

26 Burchell's files, reflected no down payment from defendant OBAGI as

27 the borrower, reflected cash paid to the borrower of approximately

28 $37,591, and reflected a "credit from seller to buyer" of $84,000.

1     <u>Overt Act No. 9:</u>   On February 6, 2009, defendant SALAH's

2 Washington Mutual/Chase Bank statement for the month of December

3 2008, account number XXXX4698, was submitted to mortgage lender Bank

4 of America in support of straw buyer R.D.'s loan application for the

5 purchase of condominium Unit 531 from the Antelope builder.

6 Defendant SALAH's account statement was altered to reflect that R.D.

7 was the account owner and to increase the true account balance from

8 approximately $433 to approximately $84,388.

9     <u>Arizona Properties</u>

10     <u>Overt Act No. 10:</u>   In June 2009, co-conspirator Tbakhi's Wells

11 Fargo Bank statement for the month of April 2009, account number

12 XXXX5903, was submitted to mortgage lender Wells Fargo Home Mortgage

13 in support of straw buyer A.E.'s loan application for the purchase of

14 property at XX30 East Lakewood Parkway, Unit 1092, in Phoenix,

15 Arizona.  Co-conspirator Tbakhi's bank statement was altered to

16 falsely reflect that A.E. was the account owner.

17     <u>Overt Act No. 11:</u>   On July 10, 2009, co-conspirator El Tahir's

18 Washington Mutual/Chase Bank statement for the month of May 2009,

19 account number XXXX7399, was submitted to mortgage lender Bank of

20 America in support of straw buyer J.S.'s loan application for the

21 purchase of property at xxx13 South Desert Foothills Parkway, Unit

22 1116, in Phoenix, Arizona.  Co-conspirator El Tahir's account

23 statement was altered to falsely reflect that J.S. was the account

24 owner and to increase the true account balance from approximately

25 $1,827 to approximately $96,221.

26

27

28

Distribution of Funds

Overt Act No. 12:   On November 5, 2008, defendant SALAH deposited Event Marketing, LLC check number 10260, in the amount of $20,000, into defendant SALAH's Washington Mutual/Chase Bank account number XXXX4698.

Overt Act No. 13:   On November 5, 2008, defendant SALAH purchased Washington Mutual official check number 2342405821, in the amount of $20,000, from defendant SALAH's Washington Mutual/Chase Bank account number XXXX4698, made payable to "Mynour Network Inc."

9

COUNTS TWO THROUGH FOUR

[18 U.S.C. §§ 1343]

10.  The Grand Jury hereby repeats and realleges paragraphs 1 through 5 and paragraphs 7 through 9 of this Second Superseding Indictment.

A.   THE SCHEME TO DEFRAUD

11.  Beginning no later than in or about November 2007, and continuing through at least in or about July 2009, in Orange County, within the Central District of California, and elsewhere, defendant OBAGI, co-conspirators Abaji and Tbakhi, and others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud mortgage lenders, including Greenlight Financial Services, Bank of America, Shelter Mortgage Co. LLC, and HSBC Mortgage Corp., as to material matters, and to obtain money and property from those mortgage lenders by means of material false and fraudulent pretenses, representations, promises, and the concealment of material facts.

12.  The scheme to defraud operated, in substance, as described in paragraph 8 of this Second Superseding Indictment.

B.   USE OF THE WIRES

13.  On or about the dates set forth below, within the Central District of California, and elsewhere, defendant OBAJI, co-conspirators Abaji and Tbakhi, and others known and unknown to the Grand Jury, for the purpose of executing the above-described scheme to defraud, transmitted and caused the transmission of the following items by means of wire communication in interstate and foreign commerce, via a Fedwire server located in New Jersey:

| Count | Date | Item Wired |
|-------|------|------------|
| 2 | 9/12/08 | Wire transfer of approximately $155,083 from Greenlight Financial Services's Texas Capital Bank account to California Counties Title Co. Professional Business Bank account, number XXXX9119, in Pasadena, California, to fund defendant OBAGI's purchase of xx34 Walerga Road, Unit 128, in Antelope, California |
| 3 | 3/16/09 | Wire transfer of approximately $161,978 from HSBC Mortgage Corp.'s HSBC Bank account, number xxxx1584, in Depew, New York, to EscrowQuick's Comerica Bank account, number XXXX8933, in El Segundo, California, to fund borrower R.D.'s purchase of xx34 Walerga Road, Unit 825, in Antelope, California |
| 4 | 7/15/09 | Wire transfer of approximately $218,879 from Bank of America's Brea Loan Line Funding account, number XXXX7447, in Charlotte, North Carolina, to EscrowQuick's Comerica Bank account, number XXXX8933, in El Segundo, California, to fund borrower J.S.'s purchase of xxx13 South Desert Foothills Parkway, Unit 1116, in Phoenix, Arizona |

A TRUE BILL

/S/
_____
Foreperson

TRACY L. WILKISON
United States Attorney

STEPHANIE S. CHRISTENSEN
First Assistant United States
Attorney

KRISTEN A. WILLIAMS
Assistant United States Attorney
Acting Chief, Major Frauds Section

ALEXANDER B. SCHWAB
Assistant United States Attorney
Deputy Chief, Major Frauds Section

KERRY L. QUINN
ADAM P. SCHLEIFER
Assistant United States Attorneys
Major Frauds Section

11