STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KERRY L. QUINN (Cal. Bar No. 302954)
ADAM P. SCHLEIFER (Cal. Bar No. 313818)
Assistant United States Attorneys
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephones:  (213) 894-5423, 4849
    Facsimile:  (213) 894-6269
    E-mails:  kerry.l.quinn@usdoj.gov;
        adam.schleifer@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 13-001(c)-DOC-2 |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |
| v. | |
| MAHER OBAGI, | |
| Defendants. | |

    Plaintiff, United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Kerry L. Quinn and Adam P. Schleifer, hereby files its opposition to the motion to dismiss filed by defendant MAHER OBAGI ("defendant" or "defendant OBAGI") on August 25, 2022 [Docket No. 860].

//
//
//
//
//

1        This Opposition is based upon the attached memorandum of points and authorities, the files and

2  records in this case, and such further evidence and argument as the Court may permit.

3    Dated: August 26, 2022                 Respectfully submitted,

4                                             STEPHANIE S. CHRISTENSEN
                                            Acting United States Attorney

5

6                                             SCOTT M. GARRINGER
                                            Assistant United States Attorney
                                            Chief, Criminal Division

7

8                                                 /s/_____
                                            KERRY L. QUINN

9                                             ADAM P. SCHLEIFER
                                            Assistant United States Attorneys

10

11                                            Attorneys for Plaintiff
                                           UNITED STATES OF AMERICA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................ 1

II.  STATEMENT OF FACTS & PROCEDURAL HISTORY ......................................... 1

III. ARGUMENT ............................................................................................................... 4

    A.   Defendant's Motion to Dismiss Fails Because There Was No Government Misconduct, Let Alone Outrageous Misconduct ............................................... 4

    B.   The Double Jeopardy Clause Does Not Prevent Prosecution ........................... 8

        1.   Defendant Affirmatively Requested the Mistrial ................................... 9

        2.   Defendant Was Not "Goaded" into Asking for a Mistrial ..................... 9

IV.  CONCLUSION .......................................................................................................... 11

**TABLE OF AUTHORITIES**

**CASES**

Currier v. Virginia,
    138 S. Ct. 2144 (2018) ............................................................................................ 9, 10, 11

Evans v. Michigan,
    568 U.S. 313 (2013) .............................................................................................................. 8

Jeffers v. United States,
    432 U.S. 137 (1977) ............................................................................................................ 11

Oregon v. Kennedy,
    456 U.S. 667 (1982) .............................................................................................................. 9

United States v. Black,
    733 F.3d 294 (9th Cir. 2013) ................................................................................................. 5

United States v. Bundy,
    968 F.3d 1019 (9th Cir. 2020) ......................................................................................... 5, 8

United States v. Chapman,
    524 F.3d 1073 (9th Cir. 2008) ......................................................................................... 8, 9

United States v. Dinitz,
    424 U.S. 600 (1976) ...................................................................................................... 9, 11

United States v. Doe,
    125 F.3d 1249 (9th Cir. 1997) .............................................................................................. 8

United States v. Gaytan,
    115 F.3d 737 (9th Cir. 1997) ................................................................................................ 8

United States v. Kearns,
    5 F.3d 1251 (9th Cir. 1993) .............................................................................................. 5, 8

United States v. Kohring,
    637 F.3d 895 (9th Cir. 2011) ................................................................................................ 8

United States v. Pedrin,
    797 F.3d 792 (9th Cir. 2015) ............................................................................................ 5, 8

United States v. Russell,
    411 U.S. 423 (1973) .............................................................................................................. 5

United States v. Scott,
    437 U.S. 82 (1978) ........................................................................................................ 9, 11

United States v. Smith,
    924 F.2d 889 (9th Cir. 1991) ................................................................................................ 5

United States v. Toilolo,
    666 F. App'x 618 (9th Cir. 2016) ........................................................................................ 8

United States v. You,
    382 F.3d 958 (9th Cir. 2004) ............................................................................................. 9

## I.       INTRODUCTION

An inadvertent technical error was made in the final <u>Bruton</u> redactions applied to a translated transcript of an Arabic-language recording between a cooperator and co-defendant Mohamed Salah ("Salah").  It was a single unapplied redaction on a single page in the middle of a fifteen-page exhibit, Exhibit 122, which was the stipulated translated transcription of the recording.  All parties, including defendant, agreed to this translation in the form introduced and played on August 24, 2022.  [CR 843.] Further, the same version, with the unapplied redaction, was filed with the government's proposed <u>Bruton</u> redactions on July 22, 2022 [CR 810], and defendant again did not object to the relevant portion [CR 818].  The relevant portion was also not redacted in versions of the government's exhibits provided to defendant on August 10, 2022, and August 19, 2022.  And defense counsel did not notice the error when the recording was played to the jury, with a simultaneous synched stipulated translation.  Instead, it was government counsel who first identified the error and -- at the first subsequent break in the proceedings -- brought it to the attention of the Court.  At defendant's request, the Court then declared a mistrial.

By declaring a mistrial, the Court has already addressed the redaction error and remedied any prejudice to the defendant that could have resulted.  Defendant, however, now moves the Court to go further and impose the drastic sanction of dismissing the indictment.  The extraordinary relief defendant requests is unwarranted.  The government's redaction error was inadvertent and unintentional and does not come close to being the type of flagrant and outrageous government misconduct that would call for the extreme remedy defendant seeks.   His motion to dismiss of the indictment should be denied.

## II.      STATEMENT OF FACTS & PROCEDURAL HISTORY

Defendant was one of the leaders in a "builder bailout" fraud carried out during the 2008 financial crisis.  The scheme and defendant's role in it have been described in prior filings, including the government's trial brief filed on August 19, 2022 [CR 844], which the government incorporates by reference.

With respect to the redaction error, the parties had largely agreed on redactions to co-defendant Salah's statements in a 2011 taped recording with the cooperator.  The government applied those redactions in sending proposed <u>Bruton</u> redactions to defense counsel on July 20, 2022, in advance of

1  the Court's July 22 deadline to file the proposed Bruton redactions.  The version sent to defense
2  counsel on July 20 had the correct redactions.  To comply with Court rules and to protect defendants'
3  privacy, the government redacted additional portions of defendants' statements, including personally-
4  identifiable information such as social security numbers and dates of birth, prior to filing those
5  statements and the proposed Bruton redactions on a public docket. It appears that the redaction error
6  was introduced in the course of implementing these additional redactions, and the version filed on the
7  public docket on July 22 was the version read to the jury on August 24, i.e., the improperly-redacted
8  version that included references to defendant's name.
9       Defendant objected to other portions of this exhibit, labeled S-23 and S-24 in defendant
10 OBAGI's objections to the government's proposed Bruton redactions [CR 818], but defense must have
11 missed the redaction error because no objection was raised to that portion of the transcript.  As set forth
12 above, the same version of the transcript (with the redaction error) was sent to defense counsel with the
13 stipulation to the English-language translation, which defendants and their counsel all signed.  The
14 same version was also sent to defense counsel in two different pre-trial productions -- one on August 10
15 and another on August 19 -- of draft government exhibits.
16      At the same time, the parties conferred regarding different Bruton redactions to other statements
17 defendants had made to the government in interviews prior to indictment, particularly focused on the
18 substitution of a generic reference or neutral pronoun to replace a co-defendant's mention of the other
19 defendant.  The parties further met and conferred on redactions to, and the translation of, statements
20 that a fugitive co-defendant, Wajieh Tbakhi ("Tbakhi"), made to cooperating defendant Ali Khatib
21 ("Khatib") in a meeting in February 2012; the recording of that meeting and the English-language
22 translation include numerous references to defendant OBAGI and co-defendant Salah, and defendant
23 OBAGI was seeking to have part of Tbaki's statements admitted.  [CR 776, 784, 788.]  Even as motion
24 practice was ongoing, the parties were working to try to narrow issues in dispute regarding the
25 admissibility of Tbaki's statements, as well as discussing translation issues and redactions that would be
26 necessary if the statements were admitted to protect defendant Salah's confrontation rights -- to the
27 extent Tbakhi also mentioned Salah.  The parties also discussed additional statements the government
28 sought to introduce once the Court granted defendant's motion to admit a portion of Tbakhi's statement

1  to Khatib [CR 829], resulting in additional motion practice.  [CR 839, 846.]  Redactions to Tbakhi's
2  statement and translation of that statement were the subject of numerous additional discussions between
3  the parties in the days and weeks leading up to trial and continued right up through the moment when
4  defendant's version of the excerpted statement was passed out to the jury.

5        By comparison, defense raised no issues with the redactions that the government had made to
6  Salah's statements to Khatib, as memorialized in the recording on Trial Exhibit 121 and the translation
7  marked as Exhibit 122, and in fact, to the contrary, they stipulated to the accuracy of the English-
8  language translation and failed to object to the mistakenly-included portion of that translation in the
9  briefing on <u>Bruton</u> redactions.  [CR 818.]  Because no objection to this portion was raised, the Court did
10 not rule on its admissibility.  [CR 839.]

11       After the second day of trial, in the middle of a direct examination of a former agent from the
12 Federal Bureau of Investigation ("FBI"), counsel for Salah raised for the first time an issue with FBI's
13 agent ability to lay a foundation for the admissibility of Salah's statements to Khatib.  The parties were
14 back and forth on this issue that night and continuing into the morning of the third day of trial, with the
15 Court ruling on the issue just before trial began for the day.  After argument from the parties and a brief
16 colloquy with the agent, the Court ruled for the government, deciding the recorded statement (Exhibit
17 121) and the translation (Exhibit 122) could be introduced through the agent.  Part of the disagreement
18 between the parties on this issue, before Court began for the day, was whether the government would
19 agree to the admissibility of Tbaki's statement to Khatib (Defense Exhibit 1520) through the agent if
20 the Court ruled the agent could not authenticate Salah's statement to Khatib.  Regardless, the Court
21 ruled the former case agent could lay a foundation for Salah's statement, and the government then
22 introduced the statement through the agent during his testimony the morning of the third day of trial,
23 playing the recorded statement while a synched transcript scrolled through the English-language
24 translation on screen.  At defendant's request, and consistent with the Court's instructions and orders,
25 the government made copies of the translated transcript (Exhibit 122) and handed them out to the jury
26 before the recording was played.

27       The recording was approximately 15 minutes long, and the redaction error was in the middle of
28 the recording and the transcript.  It was not until the recording was being played for the jury, when they

already had copies of the transcript, that government counsel noticed the redaction error. Given the fact that the jury was holding copies of the transcript, government counsel believed abruptly stopping the recording just as defendant's name was mentioned would only highlight and exacerbate the error. The government's direct examination concluded almost immediately after the recording was played, and defendant OBAGI's counsel then began cross examination. After approximately one hour of cross, the Court granted a brief recess, and immediately after the jury exited the courtroom, the government approached defense counsel to discuss the issue, believing counsel for OBAGI had also noticed the redaction error and that they were simply waiting until a break in proceedings to raise it with the Court. As it turned out, neither of defendant OBAGI's two attorneys nor counsel for Salah noticed the error, and it was government counsel who brought it to their and the Court's attention. At the break, the government explained a mistake had been made -- an inadvertent mistake -- with the <u>Bruton</u> redactions to Salah's statement and a part that had been marked for redaction had not in fact been redacted before the recording was played and the jury received copies.

     The Court asked the government for its view on how best to proceed, and the government noted the Court had given a <u>Bruton</u> instruction just prior to the recording being played and transcript distributed, instructing the jury not to consider Salah's statement in determining defendant OBAGI's guilt. The government also proposed collecting copies of the transcript from the jury to correct the redaction issue on those copies and on the copy of the exhibit that went back to the jury during their deliberations. Both defendants moved for a mistrial. The Court denied Salah's request for a mistrial, but granted defendant OBAGI's motion for a new trial. Defendant OBAGI's counsel stated he planned to seek dismissal of the indictment, and the Court ordered the parties to brief the issue in the following days and to plan to proceed to trial on August 29, 2022. Defense filed their motion on August 25, 2022 [CR 860], and this is the government's opposition. Trial is scheduled for August 29, 2022.

III.    ARGUMENT

    **A.**    **Defendant's Motion to Dismiss Fails Because There Was No Government Misconduct, Let Alone Outrageous Misconduct**

Defendant seeks dismissal of the indictment under the Due Process Clause and the Court's supervisory powers. As his motion concedes, however, and as the case law makes plain, dismissal of

4

an indictment is warranted only when there was outrageous government misconduct "so grossly shocking and so outrageous as to violate the universal sense of justice." United States v. Pedrin, 797 F.3d 792, 795-96 (9th Cir. 2015) (quotations omitted)).  Similarly, although a court "can dismiss an indictment under its supervisory powers even if the conduct does not rise to the level of a due process violation," United States v. Bundy, 968 F.3d 1019, 1030 (9th Cir. 2020) (quotations omitted), the court may do so "only if there is '(1) flagrant misbehavior and (2) substantial prejudice,'" id. at 1031 (quoting United States v. Kearns, 5 F.3d 1251, 1253 (9th Cir. 1993)); see also id. ("Only . . .'flagrant misconduct,' causing 'substantial prejudice' to the accused, will justify the court's exercise of its supervisory powers to dismiss the case with prejudice."); United States v. Smith, 924 F.2d 889, 897 (9th Cir. 1991) (dismissal reserved for rare cases where government engages in conduct "so grossly shocking and so outrageous as to violate the universal sense of justice"); United States v. Black, 733 F.3d 294, 302 (9th Cir. 2013) (quoting United States v. Russell, 411 U.S. 423, 431-32 (1973)) ("outrageous government misconduct" occurs only where "the actions of law enforcement officers or informant are 'so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.'").

Accordingly, defendant must demonstrate that the government committed flagrant or outrageous misconduct, in addition to establishing prejudice.  That he cannot do.  Without foundation or any factual basis, defendant baldly accuses the government of "misrepresentations to defense counsel and the Court about the redactions to the codefendant's statement" and "violation of the Court's order" on Bruton.  (CR 860 at 3, 14.)  These accusations are simply not true.  The government never misrepresented anything to the Court or defense.  To the extent defendant is arguing that the government implicitly represented that all Bruton redactions had been properly made when they had not been, government counsel believed all the necessary redactions had been made to the co-defendant's statement.  It was only upon the playing of the recording with the synched transcript that government counsel noticed the error, and it was immediately raised with the Court at a break in proceedings.  Nothing was intentionally misrepresented.

The government's good faith is nowhere better demonstrated than the repeated disclosures to defense of the version of the exhibit that was given to the jury.  The government filed this version (with

the accidental redaction error) in its filing of proposed Bruton redactions [CR 810]; defendant clearly received and reviewed this version of the exhibit because he objected to other parts of it, just not the inadvertently-included portion that should have been redacted [CR 818].  The defense did not object to this portion of the transcript being shown to the jury, and thus, there could be no violation of the Court's Bruton order [CR 839].  This same version of the exhibit was again sent to defense in connection with the stipulation between the parties agreeing that this version was an accurate English-language translation of the Arabic recording.  Both defendant himself and his counsel signed this stipulation. [CR 843.]  The same version was included in two different productions of government exhibits to defense, one on August 10, 2022, and another on August 19, 2022.  And it was again government counsel who spotted and reported the error.  There was no government misconduct in this case, let alone the type of flagrant or outrageous conduct that would warrant dismissal.

Defendant takes issue with the fact government counsel did not immediately stop the recording when the error was discovered.  As discussed above, however, any delay in bringing the issue to the Court's attention was an attempt to avoid drawing attention to the error and inviting or amplifying potential Bruton prejudice to defendant OBAGI.  It was for this reason -- and not for any nefarious purpose -- that government counsel waited until the first break in proceedings to raise the issue with the Court and propose a remedy outside the jury's presence.  Further, given that the recording was played in open court, with the synched transcript keyed to the recording, with defense counsel listening to the recording and following along with the transcript, government counsel reasonably assumed defense counsel had also noticed the error, and they were simply waiting for a break in the proceedings to raise it with the Court.  Apparently, neither of defendant OBAGI's two attorneys nor defendant Salah's attorney noticed the issue until it was pointed out by the government, suggesting the redaction error was of little moment and minimal importance to the overall defense.

In addition to being unable to establish any misconduct, defendant also cannot establish prejudice.  Defendant received the remedy he requested, a new trial. He will not be prejudiced by that new trial starting just a week after the current trial, particularly after participating in less than two days of witness testimony.  Further, the government has not obtained any type of tactical advantage because defense counsel cross-examined one government witness and began to cross-examine a second.  The

6

defense in this case was no secret and was in fact openly telegraphed through defendant's pre-trial filings, including notice that defendant planned to call an expert to say that numerous signatures in loan applications filed in defendant's name were not in fact his signatures and pre-trial disclosures of proposed summary exhibits making clear he intended to try to impeach the government's bank record summaries and argue certain money and conduct should be attributed to his older brother Abaji. Defense counsel also gave pre-trial notice they intended to try to introduce evidence that defendant was out of the country for a few weeks in 2008 and that he first came to the country in 2004 and was not a native English speaker. Defense counsel also previewed exhibits he planned to use on cross examination of the former FBI agent.

Defendant OBAGI attempts to bolster his Due Process claim by attempting to re-litigate issues from the original 2015 trial, suggesting the government somehow gained an advantage from retrying the case. However, the evidence in the case has not fundamentally changed. And in fact defendant now has cross-examined witnesses multiple times, and he will have an opportunity to cross examine them again, an advantage to him not the government. The fact that some of the witnesses are now deceased or otherwise unavailable is not a fact of the government's making (and much of the delay in the date for re-trial is attributable to continuances defendant himself requested, both in the trial court and on appeal, and the lengthy post-trial proceedings the original trial court granted at defendant's request). Further, defendant has not suffered any prejudice from witnesses' unavailability when he had a full and fair opportunity to cross these witnesses before, and the Court is allowing him to bring in new impeachment information that the witnesses have no opportunity to contest or explain. Finally, that the government is not calling some witnesses it called previously is in no way the product of gamesmanship, particularly where the previous jury convicted defendant after those witnesses testified; the government is not calling some witnesses simply to try to streamline proceedings, particularly in light of the narrowed focus of the case on re-trial.

Because there was no misconduct by the government, nor will defendant suffer prejudice from a new trial, the Court should deny defendant's request for dismissal under both the Due Process Clause and the Court's supervisory powers. See Pedrin, 797 F.3d at 795-96; Bundy, 968 F.3d at 1031; Kearns, 5 F.3d at 1253, 1255 (holding that even though the government's conduct "may have been negligent, or

7

even grossly negligent," it did not rise to the level of flagrant misconduct); see also United States v. Kohring, 637 F.3d 895, 912–13 (9th Cir. 2011) ("[W]e do not have sufficient evidence to conclude the prosecution acted flagrantly, willfully, and in bad faith. As a result, we do not exercise our supervisory authority by dismissing the Superceding Indictment."); United States v. Chapman, 524 F.3d 1073, 1085 (9th Cir. 2008) ("[A]ccidental or merely negligent governmental conduct is insufficient to establish flagrant misbehavior."); United States v. Doe, 125 F.3d 1249, 1257 (9th Cir. 1997) ("This [standard for the court's supervisory power to dismiss an indictment] is a high standard, limiting the availability of the defense to extreme cases, and even in some of the most egregious situations it has not been met."); United States v. Toilolo, 666 F. App'x 618, 620 (9th Cir. 2016) ("'extremely high' due process dismissal standard" not met even where the prosecution was "sloppy, inexcusably tardy, and almost grossly negligent").

There was no misconduct in this case and certainly nothing close to the type of flagrant or outrageous government conduct warranting dismissal of an indictment. And defendant also cannot establish prejudice. Absent any evidence of intentional misconduct -- and here there is none -- the appropriate remedy is the remedy defendant already received: a mistrial. He is not entitled to any other remedy. His motion should be denied.

### B. The Double Jeopardy Clause Does Not Prevent Prosecution

Defendant's other basis for his request for dismissal likewise fails. The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The Clause generally prevents retrial after a trial has commenced, unless the court finds the mistrial "justified by manifest necessity," United States v. Gaytan, 115 F.3d 737, 742 (9th Cir. 1997), or unless "the defendant consents to a disposition that contemplates reprosecution," Evans v. Michigan, 568 U.S. 313, 326 (2013). Either manifest necessity or consent is sufficient to allow retrial. Gaytan, 115 F.3d at 742. Accordingly, in a case involving "manifest necessity," where the Court "believes to a high degree that a new trial is needed," the parties' consent is irrelevant. United States v. Chapman, 524 F.3d 1073, 1081 (9th Cir. 2008). Conversely, "in the case of a mistrial declared at the behest of the defendant . . . the defendant himself has elected to terminate the

proceedings against him, and the 'manifest necessity' standard has no place in the application of the Double Jeopardy Clause." Oregon v. Kennedy, 456 U.S. 667, 672 (1982).

### 1. Defendant Affirmatively Requested the Mistrial

Defendant cannot argue that the Double Jeopardy Clause bars retrial when he was the one who asked for a mistrial. Indeed, the standard is lower than that: either "[i]mplied consent" or "express consent" is sufficient. United States v. You, 382 F.3d 958, 964 (9th Cir. 2004) (following Gaytan, 115 F.3d 737).

This principle is based on a long line of Supreme Court double-jeopardy precedent. As the Court recently explained, "a defendant's mistrial motion implicitly invite[s] a second trial and [is] enough to foreclose any double jeopardy complaint about it." Currier v. Virginia, 138 S. Ct. 2144, 2151 (2018) (citing United States v. Dinitz, 424 U.S. 600 (1976)); see also id. at 2151 ("[A] defendant's motion effectively invited a retrial of the same offense, and the Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of a voluntary choice like that." (citing United States v. Scott, 437 U.S. 82, 96, 99 (1978)); Evans v. Michigan, 568 U.S. 313, 326 (2013) (retrial "generally allowed" when defendant consents to "disposition that contemplates reprosecution").

Indeed, one of the primary cases defendant relies on makes clear that a necessary predicate of defendant's argument is that a mistrial was necessary. In Chapman, the Ninth Circuit first determined that a "mistrial was supported by a valid determination of manifest necessity," and only then went on to examine whether the district court abused its discretion under its supervisory powers by dismissing the case with prejudice. 524 F.3d at 1083-84; see also Bundy, 968 F.3d at 1043-44 (discussing standard for a dismissal under supervisory powers, distinct from the double-jeopardy analysis).

Defendant sought a mistrial. He got one. He cannot now complain that it constitutionally bars his retrial.

### 2. Defendant Was Not "Goaded" into Asking for a Mistrial

Defendant's entire argument in his motion to dismiss is that a mistrial was necessary, and he concedes as he must that the Court granted a mistrial at his request. His only argument then is that the government somehow "goaded" him into requesting a mistrial. (CR 860.) That is simply not true.

1 Government counsel brought the error in the Bruton redactions to the attention of defense counsel and the Court at the first break in proceedings. As discussed above, it would have underscored the error to have abruptly stopped the playback of the recording at the very moment where defendant OBAGI's name was mentioned. And, as described earlier, defendant's trial strategy was well-known to both parties in advance of trial. Defendant complains that he spent "hours" cross-examining a witness. But counsel began cross examination after about an hour of direct examination, and within about an hour, the Court granted a break. After the jury had left the courtroom, government counsel immediately spoke to defense counsel, and when it became clear the defense had not noticed the error, government counsel brought the issue to the attention of the Court, proposing to recollect the transcripts and replace them with properly redacted versions. Put simply, any delay in bringing the issue to the defense's and the Court's attention was simply an effort to mitigate the error, not an effort to "goad" defense into seeking a mistrial. In Oregon v. Kennedy, 456 U.S. 667 (1982), the Supreme Court rejected a defendant's argument that the "goading" test should be "broaden[ed] . . . from one of intent to provoke a motion for a mistrial to a more generalized standard of 'bad faith conduct' or 'harassment' on the part of the judge or prosecutor." Id. at 674. Here, there is no basis to find that the government affirmatively sought to bring about a mistrial.

Even if there had been an egregious error, which there was not, defendant is still faced with his own "voluntary [litigation] choice." Currier, 138 S. Ct. at 2151. In Dinitz, the trial court -- in an apparent "overreaction" -- "banish[ed]" the defendant's lawyer from the courtroom, forcing him to proceed with a new lawyer whom he did not want. 424 U.S. at 611. The defendant then moved for a mistrial, which was granted, and the Supreme Court held that the defendant could not later claim that double jeopardy barred his retrial. Id. Even if a defendant who has been wronged during the trial process faces a "hard choice," that does relieve him of the consequences of that choice: "litigants every day face difficult decisions," including being "forced to choose between allowing an imperfect trial to proceed or seeking a second that promises its own risks." Currier, 138 S. Ct. at 2152 (citing Dinitz, Scott, and Jeffers v. United States, 432 U.S. 137 (1977)).

In short, unless this Court is inclined to revisit its decision to grant defendant's request for a mistrial, defendant's double-jeopardy argument necessarily fails.

## IV. CONCLUSION

The omitted redaction was the result of a regrettable but inadvertent mistake, unnoticed by defense counsel, and flagged by the government. The Court has already addressed the mistake and remedied it by ordering a new trial. Defendant's request for the further, extraordinary remedy of dismissing the indictment should be denied.