UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CRIMINAL MINUTES – GENERAL

Case No.   8:13-cr-00001-DOC-2                                              Date: August 29, 2022

Present:  The Honorable: DAVID O. CARTER, UNITED STATES DISTRICT JUDGE

Interpreters   Zenab Khouder and Gabriel Kartouch

| Karlen Dubon | Deborah Parker | Kerry L. Quinn, Adam P. Schleifer |
|---|---|---|
| *Deputy Clerk* | *Court Reporter / Recorder* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s) | Present | Cust | Bond | Attorneys for Defendants: | Present | App | Ret |
|---|---|---|---|---|---|---|---|
| Maher Obagi | X | | X | Craig Wilke | X | X | |

**PROCEEDINGS:**      **GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE [860]**

Before the Court is a Motion to Dismiss Second Superseding Indictment with Prejudice ("Motion") (Dkt. 860) brought by Defendant Maher Obagi ("Defendant" or "Mr. Obagi") and the Government's Opposition ("Opp'n") (Dkt. 865) to the Motion. The Court heard oral argument on August 26, 2022. Having considered the briefing and oral argument, the Court GRANTS Defendant's Motion and DISMISSES WITH PREJUDICE the Second Superseding Indictment against Mr. Obagi.

**I.     Background**

    **A.     2015 Trial**

On January 3, 2013, the Government charged Maher Obagi, Mohamed Salah and others with conspiracy to commit bank and wire fraud, and charged Maher Obagi and others with six counts of wire fraud. *See generally* Indictment (Dkt. 1). On January 9, 2013, Mr. Obagi and others were arraigned, pleaded not guilty, and were released on bond subject to supervision by the Pretrial Services Agency. (Dkt. 18). The case was then set for trial.

The charges against Mr. Obagi arises out of his employment with a group of companies that were owned and managed by Ali Khatib. Indictment at 2. These companies included Excel

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Investments, Event Marketing LLC, Faris Realty and Investment Group Inc., and Orange County Property Management Inc. *Id.* Mr. Obagi allegedly conspired with others to commit wire and bank fraud in violation of 18 U.S.C. § 1349. *Id.* at 1-2, 4.

The charged scheme allegedly sought "to defraud mortgage lenders . . . by inducing them to fund loans for the purchase of newly-built, multi-unit condominium properties by submitting false and fraudulent HUD-1 [settlement statements], loan applications, and supporting documents." *Id.* at 3. The Government alleges that Mr. Obagi, who began working for Excel in late 2007, was responsible for supervising the creation of fraudulent loan documents, interfacing with banks, and enlisting new straw buyers. *Id.* at 3-6. The Government also alleges that he supervised other Excel employees and profited from the scheme. *Id.*

The case proceeded to trial in March 2015 before the Honorable Judge Andrew Guilford. (Dkt. 242). At trial, the Government introduced Exhibit 122, an 11-page translated transcript of a March 30, 2011 recorded conversation between Salah and Khatib that had redacted all references to Mr. Obagi. Declaration of Craig Wilke ("Wilke Decl.") (Dkt. 860) ¶ 2. The Government also presented testimony from Khatib, Mohamed El Tahir, John Shubash, Robert Dearstyne, Diana Harrison, and Halime "Holly" Saad. *Id.* ¶ 3.

Following the Defense closing argument, the Government alerted the Court that their colleague sitting in the audience realized that Saad had an immunity agreement with the United States Attorney in this district and was cooperating in an unrelated mortgage fraud case. Recognizing how the failure to disclose such information to Mr. Obagi constituted a violation of due process, Judge Guilford struck Saad's testimony and instructed the jury to disregard it. *United States v. Obagi*, 965 F.3d 993, 996 (9th Cir. 2020).

The next morning, the Government disclosed to the Defense 3,750 pages of materials and another 1,000 pages in the month after trial. *Id.*; *see also* Wilke Decl. ¶ 4. These documents revealed that "Saad was a culpable participant in the separate mortgage fraud scheme, had taken a bribe to falsify escrow documents, lied to law enforcement about her participation in the scheme, admitted to her actions only after receiving limited use immunity from the U.S. Attorney, and remained under investigation by a state agency in connection with her fraudulent activities." *Id.* Notably, the Defense never had an opportunity to consider the impact of these materials before submitting its case to the jury. *Id.*

After three days, the jury issued guilty verdicts on the conspiracy charge for Mr. Obagi, convicted Obagi on three substantive counts, and hung on the three remaining substantive counts. (Dkt. 256-58).

**On March 31, 2016, the Defense moved to dismiss the indictment, or in the alternative, moved for a new trial. (Dkt. 363). The Defense presented evidence that case agent Heather**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

**Campbell's failure to disclose *Brady* material was reckless. (Dkts. 363, 367, 426, 428). However, the court denied the motion on October 5, 2017. (Dkt. 454).**

**On June 5, 2018, the court sentenced Mr. Obagi to 78 months' imprisonment with $10,042,638 in restitution. (Dkt. 517).**

**On June 6, 2018, Mr. Obagi appealed the denial of a new trial but did not appeal the denial of the motion to dismiss.**

**On July 17, 2020, the Ninth Circuit reversed Mr. Obagi's convictions and remanded the case back to district court. *Obagi*, 953 F.3d 993. The Ninth Circuit found that the Government violated the defendants' due process under *Brady* and *Giglio* when it failed to timely disclose information about Saad's status as a cooperator. The Ninth Circuit held that the district court's instruction did not "fully cure[] the prejudice that resulted from the Government's *Brady* violation." Specifically,**

[w]hile the instruction informed the jury that the government had erred and that it should disregard Saad's testimony and argument about her, it did not tell the jury that the government's powerful closing was premised on a false narrative—Saad's reliability. Nor did it explain how defense counsel had presented the case one way, only to learn afterwards that the truth was something else. Despite the trial court's best efforts, the failure to disclose Saad's immunity deal 'undermine[d] confidence' in the jury's verdict.

*Id.* at 998–99 (internal citations omitted).

    **B.    2022 Trial**

Following remand from the Ninth Circuit, the case was assigned to this Court on August 11, 2020 due to Judge Guilford's retirement in January, 2020. (Dkt. 667).

This Court originally set the case for trial on March 2, 2021 but then granted the parties' stipulations for continuances (Dkts. 686. 697, 722) and then continued the trial on the Court's accord to August 23, 2022 (Dkts. 771, 806).

Defense counsel advised the Government that the first superseding indictment erroneously defined "intent to defraud." Wilke Decl. ¶ 5. The Government then obtained the second superseding indictment on April 13, 2022, which does not materially differ from the first. Second Superseding Indictment (Dkt. 763).

**Mr. Obagi moved to sever his trial from Salah, and the Court heard argument on June 28, 2022. Mr. Obagi argued that Salah's statements at a joint trial would prejudice him even if redacted. Motion to Sever (Dkt. 773) at 6-7. The Government opposed, guaranteeing that "the**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

**agent witness summarizing defendant Salah's statements (who will be the same agent witness summarizing Obagi's statements) will not mention any of Salah's statements incriminating defendant Obagi, and the translation of his recorded call with Khatib will be redacted to the extent it includes statements that incriminate Obagi." Opposition to Motion to Sever (Dkt. 782) at 12 (emphasis added). The Court accordingly denied the Motion to Sever and ordered the Government to file its proposed redactions. (Dkt. 806).**

On July 22, 2022, the Government lodged its proposed *Bruton* redactions. (Dkt. 810.) In doing so, the Government represented:

> For defendant Salah's recorded statements, the government intends to admit the translated transcript of the statements . . . with the government publishing the translation while the recording is played during this witness's testimony. The translated transcript of defendant Salah's recorded statements is attached as Exhibit C, with the government's proposed *Bruton* redactions noted through red boxes surrounding the proposed redactions; the redactions will be noted as black or grey box redactions in the exhibit the government seeks to introduce, and the redacted portions will also be omitted from the audio tape.

*Id.* at 2. However, the Government failed to fully redact a portion of the transcript which implicated Mr. Obagi. *Id.* at 9. Specifically, the Government did not redact:

> AK: But they took it.
> took everything from her."
>
> MS: Ah! Mahir took everything from her!
>
> AK: In other words, you were not with them when it was…. I heard that they were saying that *they were shredding the papers and they destroyed* the-the-*the server and the hard drive. They destroyed them and-and-and* I don't know… *they destroyed the whole comp… all the computers*. You were not with them during those days?
>
> MS: No, no.
>
> AK: They allowed you to leave… you left along with Ha… with-with
> [UI] [OV] Christina--
>
> MS: Me and Hajjah left [UI]
>
> AK: --and they--and they finished the matter. You don't know about this subject?
>
> MS: No, this one--this one, I don't know. In other words, I remember that there was so much. I told them no. They were saying…. I mean they were saying, "What are we going to do with the documents and with all of the other items?" I told them… I told them, "Talk to… talk to… I mean… let us take the items and deliver them… I mean… to the house at Uncle Ali's, for example, if the office is not safe or something." After that, they told me no. He told me, "That is it, you go ahead and--"
>
> AK: [UI] He stayed--he stayed; only he and his brother stayed at the-at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

> the office.
>
> MS: Yes, 'Arif and what is his name, Mahir stayed a little longer in the office, and then that was it. Afterwards, I was [UI] by God, I was working on that day. I remember the day; by God, it was-it was a Friday. I remember, it was the last day, by God, it was Friday.

The Defense objected to the Government's redactions but did not object to that particular portion where Mr. Obagi was implicated. (Dkt. 818). The Court ruled on the objections and found that:

> The Government can only redact names or clearly identifying information; they cannot change the content of the statements. The Government can 1) not use the statement; 2) instead of identifying people as "they" or generic groups, the Government can use "person 1, person 2, person 3, etc." to address Defense's concerns over specificity; or 3) they can sever the trial.

Order on Motions in Limine (Dkt. 829) at 2.

On Friday, August 19, 2022, the Government disclosed Exhibit 122 as a trial exhibit to Mr. Obagi, which is the redacted transcript and translation of the March 30, 2011 conversation between Salah and Khatib in Arabic. Wilke Decl. ¶ 6.

On August 22, 2022, the jury was empaneled and sworn.

The Court began with opening arguments on August 23, 2022. (Dkt. 853). At the end of the second day of trial, counsel for Mr. Obagi informed the Government that he intended to introduce loan documents through FBI Agent Mark Matthews that were not the subject of direct examination. Wilke Decl. ¶ 7. Defense counsel also gave the Government four binders of exhibits and directed her to the specific loan documents that the Defense would seek to introduce through the witness. *Id.*

The Government introduced the recording of the March 30, 2011 Arabic-language conversation between Salah and Khatib on the third morning of trial. While the recording was being played for the jury, the Government realized for the first time that the transcript was not properly redacted. Opp'n at 3-4. The Government concluded its examination of Agent Matthews and Defense went onto cross Agent Mathews. After the Defense had concluded its cross of Agent Matthews and during the first recess, the Government informed the Defense of its failure to redact ant the parties proceeded to inform the Court of what had transpired.

The Court asked the Government how to proceed, and the Government stated that the Court's *Bruton* instruction to the jury and collecting copies of the transcript from the jury would be sufficient. Opp'n 4.

Both Mr. Obagi and Salah, who were being tried together, moved for a mistrial. The Court denied Salah's request for a mistrial, but granted Mr. Obagi's request on the record. Mr. Obagi's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

counsel notified the Court of his intent to seek dismissal of the indictment, and the Court ordered the parties to brief the issue in the following days. The Court also noted its intent to tentatively proceed to trial on August 29, 2022.

Defense filed its motion on August 25, 2022, and the Government opposed on August 26, 2022.

II.     Discussion

      A.      Legal Standard

A district court has two grounds to dismiss an indictment. First, if it finds a serious due-process violation, or second, because it concludes that dismissal is warranted under its supervisory powers. *United States v. Bundy*, 968 F.3d 1019, 1030 (9th Cir. 2020) (citing *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993)).

To dismiss for a due-process violation, the Government's conduct must "be so grossly shocking and outrageous as to violate the universal sense of justice." *Id.*

Acting under its inherent supervisory powers, a district court may also dismiss an indictment: "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct." *United States v. Struckman*, 611 F.3d 560, 574 (9th Cir. 2010) (internal citations and quotation marks omitted).

Under its supervisory powers, a district court may dismiss with prejudice an indictment if there is (1) flagrant prosecutorial misbehavior and (2) substantial prejudice. *Kearns*, 5 F.3d at 1253. Further, the district court must "approach [the remedy] with some caution and a with a view toward balancing the interests involved," and have determined "no lesser remedial action" is available. Bundy, 968 F.3d at 1031 (citing *United States v. Chapman*, 524 F.3d 1073, 1087 (9th Cir. 2008)).

Ultimately, courts exercising their supervisory powers safeguard the integrity of the judicial process and prevents courts from "making . . . themselves accomplices in willful disobedience of law." *McNabb v. United States*, 318 U.S. 332, 345, (1943).

      B.      Dismissal with Prejudice under Inherent Supervisory Powers

**Mr. Obagi was first indicted almost ten years ago for conduct that took place almost fifteen years ago. Now, Mr. Obagi—at no fault of his own—faces a potential third trial on conspiracy and wire fraud charges. This Court is persuaded that the cumulative prosecutorial**

**misconduct across Mr. Obagi's two trials has resulted in substantial prejudice that cannot be remedied through further trials.**

>  1.   **Flagrant Misbehavior**

**The Government has now violated Mr. Obagi's constitutional rights twice, and this cumulative misconduct amounts to flagrant prosecutorial misbehavior.**

**In the 2015 trial, the Government violated Mr. Obagi's due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). Specifically, the Ninth Circuit held that the Government failed to time disclose critical impeachment evidence. *Obagi*, 965 F.3d at 998. Although the Ninth Circuit focused on the Government's failure to disclose Saad's status as a cooperator before trial, the Government also only disclosed over a thousand pages related to Saad and other witnesses in the case *after* trial. *Id.* at 996; *see also* Wilke Decl. ¶ 4.**

Now in the second trial, the Government has violated Mr. Obagi's confrontation rights under *Bruton v. United States*, 391 U.S. 123 (1968). *Bruton* found that the "powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant," but who does not testify, violates the defendant's Sixth Amendment right to confront the witnesses against him. *Lucero v. Holland*, 902 F.3d 979, 983–84 (9th Cir. 2018) (citing *Bruton*, 391 U.S. at 135–36). Despite consultations and admonitions from the Court, the Government failed to properly redact a codefendant's recorded statement and translated transcript of the statement, which it then introduced in its case-in-chief. While the Government's action may have been inadvertent, the Government ultimately disregarded the Court's guidance despite having already faced a mistrial in this case.

**It should go without saying that the prosecutor has a "sworn duty . . . to assure that the defendant has a fair and impartial trial," and his "interest in a particular case is not necessarily to win, but to do justice." *N. Mariana Islands v. Bowie*, 236 F.3d 1083, 1089 (9th Cir. 2001). Violating Mr. Obaji's constitutional rights not once, but twice, exhibits reckless disregard for those sworn duties. As the Ninth Circuit has stated, "[w]e have never suggested, however, that 'flagrant misbehavior' does not embrace reckless disregard for the prosecution's constitutional obligations." *Chapman*, 524 F.3d at 1085. Accordingly, that reckless disregard has amounted to flagrant misbehavior against Mr. Obagi.**

>  2.   **Substantial Prejudice**

**Each act of prosecutorial misconduct has resulted in substantial, compounding prejudice.**

**Fifteen years have passed since Mr. Obagi committed the alleged acts leading to his indictment. In the process, Mr. Obagi has been yanked through the justice system and been forced to constantly reckon with the prospect of imprisonment. While the delay may not have**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

come at the hands of the Government, it has placed an unfair burden on Mr. Obagi, who—without the conclusion of a just trial—is still presumed innocent.

Despite the Government's arguments to the contrary, Opp'n at 7, the delays in Mr. Obagi's trial have severely hampered his ability to put on a robust defense. In the time between the 2015 and 2022 trial, two witnesses have died and a third has become unavailable due to illness. The inability to call Dearstyne and Shubash in particular, who in the first trial the Government presented as secondary victims, has forced Mr. Obagi to abandon his defense theory that, like Dearstyne and Shubash, he too was victimized by Khatib, Tbakhi, and Aref Abaji. Mot. at 15. Moreover, the unavailability of all three witnesses has forced this Court and the parties to heavily rely on transcripts. As evidenced by the parties' briefings and the Court's ruling on the Motions in Limine, cautiously relying on these transcripts has forced the parties and this Court to constantly wrestle with near Confrontation Clause issues for Mr. Obagi. *See* Order on Motions in Limine (Dkt. 849); *see also* Defendant's Opposition to Motion in Limine to Admit Additional Tbakhi Statements (Dkt. 846).

The Court is particularly concerned over the Government having the opportunity to refine its case based on the information gleaned from the last two trials. As the Defense acknowledges, the Government has already altered its trial strategy after the first trial. The Government, perhaps after hearing the unsuccessful testimony of Khatib and Harrison at the first trial, choose not to call those same witnesses in the second trial. Now, if the Court were to proceed to a third trial, the Government would not only have benefited from learning the Defense's theory in the first trial but also the second trial, in which the Defense put on their full opening and cross examination of key witness Agent Matthews. In the second trial, the Defense also turned over to "government counsel four binders of defense exhibits marked at Exhibits 1001-1600 and directed her to the specific loan documents that the defense would seek to introduce through Matthews." Mot. at 11. "[R]etrying the case would only advantage the government by allowing [it] to strengthen [its] witnesses' testimony based on the knowledge gained from the information provided by the defense and revealed thus far." *Bundy*, 968 F.3d at 1029 (quoting from the district court decision). Ultimately, "the government's 'conduct has caused the integrity of a future trial and any resulting conviction to be even more questionable.' Retrial 'would only advantage the government.'" *Id.* To have the Defense revise their trial strategy a third time would be too great a task even for the best of defenders.

The Government has only proposed a single lesser remedy: a new trial scheduled soon after the declaration of the mistrial. Opp'n at 6. However, the Government's ability to constantly improve its prosecution also illuminates why this lesser remedy of granting a new trial would be inadequate. In *United States v. Chapman,* the Ninth Circuit affirmed the trial court's post-trial dismissal of the indictment and refusal to permit a retrial. The court held that "[t]he district court considered and properly rejected that argument, [i.e., the government's request to have merely a mistrial declared] because the mistrial remedy would advantage the government, probably allowing it to salvage what the

district court viewed as a poorly conducted prosecution." 524 F.3d at 1087. The Ninth Circuit went on to quote from the district court:

> If this case were to be retried, the government and its witness will not make that mistake again, and that's the advantage that the government gains by its actions here. It gets a chance to try out its case[,] identify [ ] any problem area[s], and then correct those problems in a retrial, and that's an advantage the government should not be permitted to enjoy.

*Id.*

The prejudice resulting from a third trial is particularly substantial when the first of the Government's cases was so close. As the Ninth Circuit acknowledged on Mr. Obagi's appeal following the first trial:

> Prejudice is especially likely here because the case was so close. The jury deliberated for three days and still delivered a split verdict on the charges against Obagi. *United States v. Leal-Del Carmen*, 697 F.3d 964, 976 (9th Cir. 2012) (finding prejudice where "jury deliberations spanned two days and ended in a split verdict"); *United States v. Velarde-Gomez*, 269 F.3d 1023, 1036 (9th Cir. 2001) (en banc) ("Longer jury deliberations weigh against a finding of harmless error because lengthy deliberations suggest a difficult case." (internal quotation marks, citations, and alterations omitted)). Given the difficulty the jury faced in reaching a verdict, we cannot say with confidence that the undisclosed impeachment did not affect the jury's judgment.

**ced*Obagi*, 965 F.3d at 998. Although Mr. Obagi's second trial did not reach deliberations, it's likely that Mr. Obagi's second and prospective third trial would have been similarly close.**

**III.    Disposition**

**Ultimately, the Government is not entitled to continually try its case until it achieves a favorable result. This Court is "exercis[ing] its supervisory power to make clear that the misconduct was serious . . . and that steps must be taken to avoid a recurrence." *United States v. Kojayan*, 8 F.3d 1315, 1325 (9th Cir. 1993). Given the flagrant misconduct, the substantial prejudice to the Mr. Obagi, and the lack of a lesser remedy, the Court DISMISSES WITH PREJUDICE the Second Superseding Indictment against Mr. Obagi.**

**cc: USPPO**

:02
**Initials of Deputy Clerk** kdu